# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TODD P. MICHAUD,**

                         **Plaintiff,**

**-vs-**                                          **Case No.  6:04-cv-1371-Orl-UAM**

**US STEAKHOUSE BAR AND GRILL,**
**INC., STACEY DIASSINOS,**
**JOHN DIASSINOS,**
                         **Defendants.**
_____

# ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT (Doc. No. 71)** |
| **FILED:** | **August 9, 2007** |

## I.    PROCEDURAL HISTORY.

Plaintiff Todd P. Michaud filed a complaint in this action on  September 14, 2004, seeking to

hold Defendants liable for failing to pay him overtime wages and the minimum wage in violation of

the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b) ("FLSA").  Doc. No. 1.

Defendants US Steakhouse Bar and Grill, Inc. ("US Steakhouse"), Stacey Diassinos, and John

Diassinos appeared through counsel Gary Sack, Esq., and filed an answer to the complaint on April

13, 2004.  Doc. No. 14.

In the Case Management and Scheduling Order, the Court ordered the parties to appear at a

Final Pretrial Conference on January 31, 2006, and scheduled a two-day bench trial for February 15,

2007.  Doc. No. 40 at 1-2.  On September 29, 2006, Plaintiff's counsel filed a "Suggestion of Bankruptcy of John Diassinos," in which Plaintiff advised the Court that John Diassinos had filed a Petition for Bankruptcy in the United States Bankruptcy Court for the Southern District of Florida, Case No. 06-14665-JKO.  Doc. No. 48.  Upon review of the Suggestion of Bankruptcy, the Court ordered that the action be stayed "as to Defendant John Diassinos until such time as the United States Bankruptcy Court lifts the automatic stay in this action."  Doc. No. 49.  The Court added: "The action proceeds, however, as to Defendant US Steakhouse and Defendant Stacey Diassinos."  *Id.*

On October 9, 2006, attorney Sack filed a motion to withdraw as counsel for Defendants.  Doc. No. 50.  Sack stated that he "contacted Mr. Diassinos who is the principal defendant [*sic*] United States Steakhouse [*sic*] and confirmed he is unwilling to engage counsel's services further in this matter on behalf of U.S. Steakhouse [*sic*]."  *Id.* at 1.  Sack requested that the Court grant leave to withdraw ten days after the date of service of his motion to withdraw.  *Id.* at 2.  Sack certified that on October 9, 2006, he mailed a copy of the motion to withdraw to US Steakhouse and John Diassinos at "1380 South Ocean Blvd., Pompano Beach, FL 33062."  *Id.*  On October 10, 2007, the Court denied Sack's motion to withdraw "for failure to comply with Local Rules 2.03(b) (notice to Stacey Diassinos and opposing counsel) and 3.01(g) (certificate of conference)."  Doc. No. 51.

On October 23, 2006, Sack filed an second motion to withdraw as attorney for Defendants. Doc. No. 52.  In this motion, Sack informed the Court that John Diassinos had filed a petition for bankruptcy on September 21, 2006, and, again, stated that Sack contacted John Diassinos "who is the principal defendant [*sic*] United States Steakhouse [*sic*] and confirmed he is unwilling to engage counsel's services further in this matter on behalf of U.S. Steakhouse [*sic*]."  *Id.* at 1.  Sack again

asked the Court to grant leave to withdraw ten days after service of the motion as set forth in his

certificate of service.  *Id.* at 2.  Sack also added: "Pursuant to Local Rule 2.03(b)[,] ten (10) days [*sic*]

notice was given to the Defendants and to opposing counsel by virtue of the Motion for Leave to

Withdraw previously filed with the Court and served October 9, 2006."  *Id.*  Sack also certified that

on October 23, 2006, he mailed a copy of the motion to withdraw to US Steakhouse and John

Diassinos at "1380 South Ocean Blvd., Pompano Beach, FL 33062."  *Id.*  Plaintiff did not oppose the

second motion to withdraw.

      On October 24, 2006, the Court granted Sack's second motion to withdraw.  The Court further

stated:

>       All three Defendants have appeared and filed an answer through their attorney, Gary
> B. Sack.  A Suggestion of Bankruptcy (individual) as to Defendant John Diassinos was
> filed, and this Court previously stayed the case as to him.  In his Renewed Motion to
> Withdraw, Sack again fails to clarify whether he seeks to withdraw as to all three
> Defendants, and does not recite that he has given notice to Defendant Stacey Diassinos
> as required by Local Rule 2.03(b).  Nevertheless, the Court construes the motion as
> seeking to withdraw on behalf of all three Defendants given the ambiguous use of the
> plural word "Defendants."  Furthermore, the Court presumes that Sack has given
> notice in light of this Court's previous warning [Doc. No. 51], and his request to delay
> ruling on the motion for ten days [Doc. No. 52 at 2].  The motion to withdraw is
> therefore GRANTED as to all three Defendants.  However, a corporation may be heard
> only through counsel.  See Local Rule 2.03(e).  Therefore, new counsel for Defendant
> US Steakhouse Bar and Grill, Inc. shall file a notice of appearance on or before
> November 17, 2006.  The Clerk shall note the appearances pro se of Defendant Stacey
> Diassinos and Defendant John Diassinos at the following addresses: 1.) Stacey
> Diassinos, 1380 South Ocean Blvd., Pompano Beach, Florida, 33062, and 2.) John
> Diassinos, 1380 South Ocean Blvd., Pompano Beach, Florida, 33062.

Doc. No. 53 (citations omitted).

      No counsel filed a notice of appearance on behalf of US Steakhouse.  On November 20, 2006,

the Court found that US Steakhouse had not complied with the Court's order for counsel to file a

notice of appearance, and set a status conference for January 24, 2007. Doc. No. 54. The Court

warned: "Failure of any Defendant (individual or corporation) to appear in person and through counsel

may result in the striking of pleadings or entry of default." *Id.*

None of the Defendants appeared for the hearing, and the Court directed the Clerk to enter

default against US Steakhouse and Stacey Diassinos. *See* Doc. Nos. 56, 57. The Clerk entered default

against these two defendants on January 24, 2007. Doc. No. 58.

John Diassinos's bankruptcy action was closed on June 8, 2007, the trustee having filed a final

report that the estate had been fully administered and the Honorable John K. Olson, United States

Bankruptcy Judge, having discharged the trustee. *See* Case No. 06-14665-JKO, Doc. No. 29. The

automatic stay in bankruptcy was therefore lifted pursuant to 11 U.S.C. § 362(c).

On July 9, 2007, Plaintiff filed a motion to lift the stay and reopen the case as to John

Diassinos. Doc. No. 66. Plaintiff served John Diassinos with the motion by mailing a copy of the

motion to John Diassinos' address of record. *Id.* On July 10, 2007, the Court issued an order

requiring John Diassinos to appear in person at a hearing on the motion scheduled on July 25, 2007.

Doc. No. 67. The Court's order warned John Diassinos that failure to appear may result in the entry

of default pursuant to Federal Rule of Civil Procedure 16(f). *Id.* The Court's order was served on

John Diassinos by mail on July 11, 2007.

On July 25, 2007, Diassinos failed to appear at the scheduled hearing, and the Court granted

Plaintiff's *ore tenus* motion for entry of default against John Diassinos, having found that the sanction

of default was warranted due to John Diassinos's willful disregard of Court orders and that lesser

sanctions would not suffice.  *See* Doc. Nos. 68, 69.  The Clerk entered default against John Diassinos

on July 26, 2007.  Doc. No. 70.

Plaintiff now seeks default judgment against US Steakhouse, Stacey Diassinos, and John

Diassinos for: (1) $16,600.18 for unpaid overtime and $16,600.18 in liquidated damages, (2)

$2,098.00 for violation of the minimum wage provision of the FLSA and $2,098.00 in liquidated

damages, and (3) $12,159.50 in attorneys' fees and costs.  Doc. No. 71 at 6.  Plaintiff previously filed

a motion for default judgment against US Steakhouse and Stacey Diassinos, which the Court denied

without prejudice pending the resolution of John Diassinos's bankruptcy action.  Doc. Nos. 59, 64.

The Court observes that in his first motion for default judgment, Plaintiff sought: (1) $5,540.55 for

unpaid overtime and $5,540.55 in liquidated damages, and (2) $13,157.63 for violation of the

minimum wage provision of the FLSA and $13,157.63 in liquidated damages.  Doc. No. 59.  I will

discuss the discrepancies in the figures below.

In support of his original and renewed motions, Plaintiff filed: (1) affidavits of Todd Michaud;

(2) affidavits of Konstantine E. Pantas, Esq., counsel for Plaintiff; and, (3) an itemized time sheet for

Pantas, Scalise, and Cane, and invoices in support of the costs claimed.  Doc. Nos. 59-2, 59-3, 59-4,

59-5, 71-2, 71-3, 71-4, 71-5.  Plaintiff served the renewed motion on all Defendants.  No Defendant

responded to the motion, and the time for doing so has passed.

## II.    THE LAW.

Federal Rules of Civil Procedure 16 (f) and 37 (b) provide the Court with the power to sanction

an offending party, including entering default judgment and awarding reasonable expenses under

certain circumstances.  Rule 16(f) provides that:

> [i]f a party or party's attorney fails to obey a scheduling **or pretrial order**, or if no
> appearance is made on behalf of a party at a scheduling or pretrial conference, . . . the
> judge, upon motion or the judge's own initiative, may make such orders with regard
> thereto as are just, and among others any of the orders provided in Rule 37 (b)(2)(B),
> (C), (D).

Fed. R. Civ. P. 16(f) (emphasis added).  Rule 37 (b)(2) provides, in relevant part, that the Court

may issue: "[a]n order striking out pleadings or parts thereof, . . . or rendering a judgment by default

against the disobedient party[.]"  Fed. R. Civ. P. 37 (b)(2)(C).

Judgments by default are a "drastic remedy and should be resorted to only in extreme

situations."  *Charlton L. Davis & Co. v. Fedder Data Ctr.*, 556 F.2d 308, 309 (5th Cir. 1977) (citing

*E.F. Hutton & Co. v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972)).  The Court shall enter default

judgment "only if noncompliance is due to willful or bad faith disregard of court orders."  *Adolph*

*Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985).  The

district court must find that "less draconian but equally effective sanctions" would not be effective.

*Id.* at 1543 (citing *Aztec Steel Co. v. Fla. Steel. Corp.*, 691 F.2d 480, 481-82 (11th Cir. 1982)).  When

the non-compliant party demonstrates "a flagrant disregard for the court and the discovery process,"

however, the "severe" sanction is not an abuse of discretion.  *See Aztec Steel Co.*, 691 F.2d at 481.

In considering whether a default judgment is appropriate, the Court must examined the well-

pleaded allegations of the complaint to determine whether the factual allegations of the complaint,

which are assumed to be true, provide a sufficient basis to support a finding that a defendant is liable.

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975) ("The defendant

is not held to admit facts that are not well-pleaded or to admit conclusions of law.");  *Fid. & Deposit*

*Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga.1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla.1999).   If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages.   *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997) (citing Federal Rule of Civil Procedure 55(b)(2)). However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages.  *Id.*

### III.   ALLEGATIONS OF THE COMPLAINT.

Plaintiff was employed as a maintenance worker by US Steakhouse from June 19, 2003 through February 3, 2004, and was engaged in commerce as defined by the FLSA.   Doc. No. 1 ¶¶ 4, 6.   US Steakhouse is an employer as defined in the FLSA, and was an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA.  *Id.* ¶¶5, 7.   Defendants Stacey Diassinos and John Diassinos were the owners or officers of US Steakhouse.  *Id.* ¶ 8.   Stacey Diassinos and John Diassinos were also substantially in control of the terms and conditions of Plaintiff's work and, as such, they were Plaintiff's employers as defined in the FLSA.  *Id.* ¶ 9.   US Steakhouse, Stacey Diassinos, and John Diassinos willfully failed to pay Plaintiff overtime wages and the minimum wage as required by the FLSA for time worked between June 19, 2003 and February 3, 2004.  *Id.* ¶¶ 12, 14.

IV.    **ANALYSIS**.

    A.    **Default Judgment as a Sanction.**

I first find that sanction of default judgment, although drastic, is warranted due to Defendants' willful disregard of Court orders, and that lesser sanctions would not suffice.  No counsel for US Steakhouse has filed a notice of appearance, despite the Court's order to do so on or before November 17, 2006; neither Stacey Diassinos nor a representative for US Steakhouse appeared at the January 24, 2007 status conference, despite the Court's warning that failure to comply might result in the striking of pleadings or entry of default; John Diassinos failed to appear for the July 25, 2007 hearing, also despite the Court's warning that failure to comply might result in the entry of default against him; and no Defendant opposes entry of default judgment.[1]

    B.    **FLSA Causes of Action.**

        1.    **Liability.**

To establish a claim for payment of overtime wages and the minimum wage under the FLSA, Plaintiff must establish the following:

> First, that he was employed by US Steakhouse, Stacey Diassinos, and John Diassinos during the time period involved;
>
> Second, that he was engaged in commerce or production of goods for commerce; and
>
> Third, that US Steakhouse, Stacey Diassinos, and John Diassinos failed to pay overtime wages and the minimum wage required by law.

ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS – CIVIL 1.7.1 (2005).

---

[1]    I also note that prior to Sack's withdrawal, the Court entered several orders to show cause against Defendants for failure to comply with Court orders.  *See* Doc. Nos. 17, 25, 31.

"'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid [minimum] wages.'" *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir.1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983)). "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.* at 638.

By defaulting, US Steakhouse admits that it employed Plaintiff during the relevant time period, that Plaintiff was engaged in commerce, and that it failed to pay Plaintiff overtime wages and the minimum wage as required by the FLSA. This is sufficient to establish that US Steakhouse is liable to pay Plaintiff the minimum wages he is owed for his work. In addition, by defaulting, Stacey Diassinos and John Diassinos admit that they were the "owners and/or officers" of US Steakhouse and that they were substantially in control of the terms and conditions of Plaintiff's work. Accordingly, Defendants US Steakhouse, Stacey Diassinos, and John Diassinos are jointly and severally liable to Plaintiff for overtime and minimum wages due but unpaid.

### 2.    **Damages**.

Under the FLSA, Plaintiff is entitled to be compensated for the difference between the wages he received and $5.15 per hour for the work he performed, 29 U.S.C. § 206(a)(1), and for one and one-half times his regular rate for all hours worked in excess of forty hours per work week, 29 U.S.C. § 207(a).[2]

---

[2]    The FLSA provides that "[e]very employer shall pay to each of his employees who . . . is engaged in commerce or in the production of goods for commerce . . . [the minimum wage]." 29 U.S.C. § 206(a)(1). The FLSA further provides that "no employer shall employ any of his employees who . . . is engaged in commerce or in the production of goods for commerce . . . for a

In his original affidavit, Plaintiff averred as follows regarding his minimum wage claim:

> From June 18, 2003 to February 3, 2004, I worked a total of 3,467.50 hours and received a total of $4,700.00 from US Steakhouse Bar and Grill, Inc. for the work I performed for the company.
>
> I am owed $5.15 per hours for 3,467.50 hours for a total of $17,857.63, less pay received in the amount of $4,700.00 for a total amount of $13,157.63.

Original Michaud Aff., Doc. No. 59-2, ¶¶ 3, 4.

In his original affidavit, Plaintiff averred as follows regarding his overtime compensation claim:

> I was not compensated at a rate of one and one-half times my regular rate of pay for any hours worked over 40 hours per week.
>
> I worked 2,147.5 hours of overtime.  I was not compensated for any of my overtime hours worked.
>
> I am owed $2.58 per hour for each hour I worked over 40 for a total of $5,540.55.

*Id.* ¶¶ 5-7.

In his revised affidavit, Plaintiff averred as follows:

> From June 18, 2003 to February 3, 2004, I worked approximately 33 weeks at 40 hours a week for a total of 1,320 regular hours worked.  At the minimum wage rate of $5.15 an hour, I am owed 1,320 x $5.15 for a total of $6,798.00.  I was paid approximately$4,700.00.  I am owed $2,098.00 for violation of the minimum wage provision.

Revised Michaud Aff., Doc. No. 71-2, ¶ 5.  Plaintiff also averred that he worked 2,147.5 hours of overtime and was not compensated for any of his overtime hours worked.  *Id.* ¶ 8.  He claims that he

workweek longer than forty hours unless such employee receives compensation . . . at a rate no less than one and one-half times the regular rate . . . ." 29 U.S.C. § 207(a)(1).

is owed $7.73 (which is $5.15 multiplied by one and one-half) per overtime hour worked for a total of $16,600.18. *Id.* ¶¶ 9, 10.

The differences between Michaud's two affidavits arise from the different method used to calculate damages. The result is the same, however. From June 19, 2003 through February 3, 2004, Michaud worked a total of 3,467.50. He is entitled to be paid at the federal minimum wage of $5.15 per hours for all of these hours of work. Thus, the minimum wage due is $17,857.63 (3,467.50 x $5.15). He has already been paid $4,700.00 for this work. Thus, Defendants will be required to pay $13,157.63 in unpaid minimum wages.

Of the total 3,467.50 hours worked, 1,320 hours are regular time (33 work weeks x 40 hours per week), and the remaining 2,147.5 were hours worked in excess of 40 hours per week. Pursuant to this Order, Michaud will be paid his regular rate of pay, $5.15, for these hours. He is, therefore, entitled to an additional one-half his regular rate of pay, or $2.58 for each overtime hour. Thus, the overtime compensation due is $5,540.55 ($2.58 x 2,147.50 hours).

Accordingly, the total compensation due to Michaud under the FLSA is $18,698.18, which is the total figure contained in the original and revised Michaud affidavits. Therefore, the discrepancies in the manner in which the amount due was calculated is irrelevant, because both methods of calculation arrive at the same damage figure.

It is well established that "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

-11-

inference." *Etienne v. Inter-County Sec. Corp.*, 173 F.3d 1372, 1375 (11th Cir.1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). In this case, Defendants have defaulted and have not filed an opposition to the instant motion for default judgment. I therefore find that Plaintiff's affidavit is sufficient evidence to show the amount and extent of the work he performed.

Accordingly, Plaintiff is owed $5.15 per hour for 1,320 hours worked, minus the $4,700.00 he was paid, which totals $2,098.00 in unpaid minimum wages under the FLSA. Plaintiff is also owed overtime wages for 2,147.5 overtime hours worked, which totals $16,600.18. Defendants US Steakhouse, Stacey Diassinos, and John Diassinos are liable, jointly and severally, to pay Plaintiff the total amount of $18,698.18.

### 3.   **Liquidated Damages**.

In addition, by defaulting, Defendants also admit that they acted willfully in failing to pay Plaintiff the statutorily required overtime wages and minimum wage for hours worked. When, as here, the defendants defaulted on their defense that the failure to pay the wages owed was in good faith, the court must also require the employer to pay liquidated damages in an additional amount equal to "the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . ." 29 U.S.C. §§ 216(b), 260; *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n.18 (5th Cir.1979). Accordingly, US Steakhouse, Stacey Diassinos, and John Diassinos are liable, jointly and severally, to pay Plaintiff the amount of compensation owed to Michaud under the FLSA, $18,698.18, as liquidated damages.

-12-

C.      **Attorneys' Fees and Costs**.

The FLSA mandates that in any action brought by an employee to enforce section 206 or 207 of the Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the United States Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  This amount, which is commonly referred to as the lodestar, is then adjusted to reflect the "results obtained."  *Id.* at 434; *accord Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir.1988).

Plaintiff seeks an award of $11,624.50 for the services provided by his attorneys, Pantas and Charles Scalise, Esq., and their paralegal, Cane, in connection with this case.  Doc. No. 71-3, Pantas Aff. ¶ 7.  The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.' "  *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999) (quoting *Norman*, 836 F.2d at 1303).  Thus, the applicant must produce satisfactory evidence that the requested rate is within the prevailing market rates and supports the number of hours worked and the rate sought. *Hensley*, 461 U.S. at 433.  "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.  Moreover, fee applicants must provide "fairly definite information" concerning activities performed by each attorney. *See Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996) (quoting *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir.1990)).  It is well

-13-

established that the Court may use its discretion and expertise to determine the appropriate hourly rate

to be applied to an award of attorney's fees. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F.

Supp. 2d 1328, 1331 (M.D. Fla. 2002).

               **1.**     **Hourly Rate**.

      As discussed earlier, Plaintiff seeks compensation for the work of attorneys Pantas and Scalise

and paralegal Cane.[3]  Pantas avers that he has been licensed to practice law in Florida since 1993.  He

has over eleven years of litigation experience and has practiced "extensively" in the area of

employment law since 2000.  Doc. No. 71-3, Pantas Aff. ¶ 4.  Pantas also avers that Scalise has been

licensed to practice law in Florida since 1988.  *Id.* ¶ 5.  Scalise has over seventeen years of litigation

experience and has practiced exclusively in the area of employment law for the last seven years.  *Id.*

The two attorneys claim an hourly rate $300.00.  *Id.* ¶ 7.

      Pantas also avers that Cane has trained and worked as a paralegal since 1999, and that she has

experience drafting pleadings, discovery, motions, and affidavits.  *Id.* ¶ 6.  State courts in Florida have

determined that a reasonable rate for her services is $95.00 per hour, which is the rate claimed for her

work in this case.  *Id.* ¶¶ 6, 7.

      In other FLSA cases, this Court has previously determined that a reasonable rate for Pantas and

Scalise's services, considering the Orlando legal market, is $250.00 per hour.  *Reyes v. Falling Star

Enters., Inc.*, No. 6:04-cv-1648-Orl-KRS, 2006 WL 2927553, at *3 (M.D. Fla. Oct.12, 2006);

*Kittredge v. County Transp. Group, Inc.*, 6:06-cv-1705-Orl-28KRS, 2007 WL 1427048, at *4 (M.D.

---

       [3]      Scalise was granted leave to withdraw as counsel for Plaintiff on April 30, 2007.  Doc.
No. 61.  Prior to his withdrawal, he performed the bulk of the work.  *See* Doc. No. 71-3, Pantas Aff.
¶ 7 (claiming 28.2 hours expended by Scalise and 8.3 hours expended by Pantas).

Fla. May 11, 2007).  The Court has also previously approved, in the absence of objection, an hourly rate of $95.00 for work performed by Cane.  *See Reyes* at *4; *Kittredge* at *4.  Pantas cites *Smith v. Richard's Restoration, Inc.*, Case No. 6:05-cv-1072-Orl-DAB, doc. no. 61 (M.D. Fla. Jan. 8, 2007), for the proposition that an hourly rate of $300.00 is appropriate.  However, in *Smith*, the Court specifically noted that although the $300.00 hourly rate was "far greater than those usually awarded in this District for like work, a review of the file confirms that this case was particularly complex, involving motions to dismiss, discovery practice, and protracted settlement and mediation efforts."  *Smith*, doc. no. 61 at 3.  Because I find that this case, unlike *Smith*, was not particularly complex, *Smith* is not persuasive here.[4]

Considering the Orlando legal market, awards in similar cases, and the quality of work performed in this case, an hourly rate of $250.00 for work performed by Pantas and Scalise is appropriate in the absence of objection.

**2.      Reasonable Number of Hours**.

Pantas submitted an itemized time sheet indicating the work performed in this case, which reflects that he worked 8.3 hours, Scalise worked 28.2 hours, and Cane worked 7.1 hours.  Doc. No. 71-4.  Even though the defendants have not objected to the attorneys' fees sought, the Court must review the time worked to determine whether it is objectively unreasonable.

On June 18, 2004, Cane recorded 1.6 hours for "Initial Setup of file; locate (*sic*) of individual Defendants; Conflict checks; Comprehensive Corporate Locate & Identification search."  *See* Doc.

----

[4] Additionally, in *Smith v. Richard's Restoration, Inc.*, while the motion for attorneys' fees listed the hourly rate at $300.00, the calculations actually used the hourly rate at $250.00; and the Court used the lower amount.  No. 6:05-cv-1072-Orl-DAB, doc. no. 61 at 3 n.2.

No. 71-4 at 1.  On April 26, 2006, Cane recorded 0.40 hours for "Calendaring of Case Management and Scheduling Order."  *Id.* at 3.  "Setup" of a file and calendaring deadlines are clerical tasks not reasonably compensated under attorney's fee provisions.  *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000); *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").  Accordingly, Cane's time should be reduced by 0.80 hours (estimating 0.40 hours for "Initial Setup of file" in the absence of a more specific breakdown by Plaintiff) from 7.1 hours to 6.3 hours total.

The time expended by Pantas and Scalise appears reasonable, in the absence of objection. Plaintiff shall therefore receive an attorneys' fees award of $9,723.50.[5]

### 3. Costs.

Plaintiff seeks an award of costs in the amount of $535.00 for reimbursement for the filing fee ($150.00) and for the costs of serving process in this case ($385.00 total for two service attempts on each Defendant).  Doc. No. 71-3, Pantas Aff. ¶ 8; Doc. No. 71-5 (invoices); *see also* Doc. Nos. 7-2, 7-3, 7-4 (affidavits of non-service from the process server stating that she believed defendants were avoiding service of process).  The FLSA provides for a mandatory award of "costs of the action" to a prevailing plaintiff. 29 U.S.C. § 216(b). The United States Court of Appeals for the Eleventh Circuit has held that in FLSA cases, courts may award as costs those expenses permitted by 28 U.S.C. § 1920. *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir.1988).

---

[5] The attorneys' fees are calculated as follows: $2,075.00 in fees for Pantas, who worked 8.3 hours at an hourly rate of $250.00; 2.) $7,050.00 in fees for Scalise, who worked 28.2 hours at an hourly rate of $250.00; and 3.) $598.50 in fees for Cane, who worked 6.3 hours at an hourly rate of $95.

The filing fee and costs of service are permitted under § 1920.  See *EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). Therefore, Plaintiff is awarded $535.00 in costs, absent objection.

## V.       CONCLUSION.

Plaintiff's Renewed Motion for Entry of Default Judgment (Doc. No. 71) is **GRANTED**, in part, and **DENIED**, in part.  The Clerk shall enter default judgment against Defendants US Steakhouse Bar and Grill, Inc., Stacey Diassinos, and John Diassinos on Plaintiff's FLSA claims for unpaid overtime and minimum wage compensation, with Defendants US Steakhouse Bar and Grill, Inc., Stacey Diassinos, and John Diassinos to pay Plaintiff damages, jointly and severally, in the amount of $47,654.86, which represents $13,157.63 in unpaid minimum wages, $5,540.55 in unpaid overtime compensation, and $18,698.18 ($13,157.63 + $5,540.55) in liquidated damages; attorneys' fees in the amount of $9,723.50; and costs in the amount of $535.00.  After entering judgment, the Clerk shall close the case.

**DONE** and **ORDERED** in Orlando, Florida on September 5, 2007.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

-17-